IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN MENSAH-YAWSON,  )
    Petitioner,  )
                      )
                      ) Crim. Action No. 09-0276
v.                    ) Civil Action No. 12-1685
                      )
UNITED STATES OF AMERICA,  )
    Respondent.  )

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                  March __, 2013

This is a motion to vacate sentence under the federal habeas statute, 28 U.S.C. § 2255.[1] On December 15, 2010, a federal jury found petitioner Steven Mensah-Yawson, a citizen of Ghana, guilty of conspiring to commit an offense against the United States in violation of 18 U.S.C. 371. On January 7, 2011, this court sentenced Mensah-Yawson to time served with two years of supervised release, to begin on the date of his release from Immigration and Customs Enforcement ("ICE") custody, and also required him to make restitution.

On November 5, 2012, Mensah-Yawson petitioned this court pro se to vacate his sentence on the grounds that he received ineffective assistance of counsel in violation of the

---

[1] All docket references in this opinion refer to U.S. v. Mensah-Yawson, Cr. No. 09-0276 (W.D.Pa. filed Sept. 15, 2009).

Sixth Amendment at his criminal trial and on appeal [doc. no. 236]. Ten days later, Mensah-Yawson was arrested on an ICE detainer. He is currently awaiting deportation to Ghana.

For the reasons set forth below, we will deny Mensah-Yawson's motion to vacate his sentence without a hearing.

I. FACTUAL BACKGROUND

A. The Criminal Case

On September 15, 2009, a federal grand jury returned an indictment against Steven Mensah-Yawson and three co-conspirators for knowingly and willfully conspiring to engage in a fraudulent check-cashing scheme. [Doc. No. 1.] Mensah-Yawson was alleged to be the leader of the conspiracy. [Id.] Under the Immigration and Nationality Act, if the amount of the pecuniary loss to the victims of the check-cashing scheme is found to be greater than $10,000, Mensah-Yawson's offense rises to the level of an aggravated felony, thereby placing him at a severe risk of being deported. 8 U.S.C. § 1101(a)(43)(M).

At the time the indictment was returned, Mensah-Yawson was already in ICE custody on unrelated state charges. [Doc. No. 13.] Mensah-Yawson was arraigned on October 20, 2009, at which time he waived his detention hearing and thus remained in ICE custody. At various times prior to Mensah-Yawson's trial,

each of his three confederates pled guilty to the conspiracy charge set forth in the indictment.

Mensah-Yawson's trial began on December 13, 2010, and the jury returned a verdict of guilty on December 15. During his trial, Mensah-Yawson was represented by Sally A. Frick, a private attorney in Pittsburgh, Pennsylvania. On January 7, 2011, this court sentenced Mensah-Yawson to time served, two years of supervised release to begin upon his release from ICE custody, and required him to make restitution in the amount of $43,645.98, to be paid jointly and severally by him and his three co-conspirators. We also found at sentencing that the total loss resulting from the conspiracy was $54,586.82. During our review of the section 3553(a) factors, we noted that Mensah-Yawson's state and federal convictions made it eminently likely that he would be deported to Ghana. Mensah-Yawson was released from ICE custody on May 26, 2011, at which time he began the term of supervised release mandated by this court.

B. The Appeal

Following his sentencing, Mensah-Yawson appealed his conviction on the ground that his right to a speedy trial under the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 et seq., was violated. U.S. v. Mensah-Yawson, 2012 WL 2335317 at *1 (3d Cir. June 20, 2012). Mensah-Yawson based his STA claim on his having

3

"waited 456 days from the filing of the indictment, 421 days from the date he was arraigned, 223 days from when the government responded to his pretrial motions, and 139 days from when he requested severance from his codefendants" before his trial began. Id. at *4 n.4. The alleged STA violation was the only claim Mensah-Yawson raised on appeal.

Holding that Mensah-Yawson's calculations did not account for the STA's various tolling provisions, the court of appeals affirmed his conviction. Id. at *13. Sally Frick, the attorney who represented Mensah-Yawson at his criminal trial, also represented him during his appeal.

C. The § 2255 Petition

On November 5, 2012, Mensah-Yawson signed, executed, and mailed to the clerk of this court a section 2255 petition to challenge his conviction and vacate his sentence. [Doc. No. 236 at 21.] Ten days later, on November 15, 2012, he was arrested by Homeland Security agents and was served with a notice of intent to administratively remove him from the United States due to his being convicted of an aggravated felony. [Doc. No. 239, Ex. 1 at 423.] The following day, November 16, 2012, the clerk of court received and docketed Mensah-Yawson's pro se section 2255 petition. As of December 20, 2012, Mensah-Yawson remains

4

in ICE custody pending a credible fear interview with an Asylum Officer in York County, Pennsylvania. [Id.]

In his section 2255 petition, Mensah-Yawson argues that his conviction and sentence resulted from his receiving ineffective assistance of counsel in violation of the Sixth Amendment. He grounds his ineffectiveness claims on his attorney's alleged failure to: (1) move for the dismissal of the indictment and (2) object to the total amount of the loss sustained as a result of the conspiracy, because he claims that he is responsible for a loss amount under $10,000 rather than the $54,586.52 found by this court at sentencing.[2]

The government argues that this court lacks jurisdiction over Mensah-Yawson's petition because he was not "in custody" within the meaning of section 2255 when he filed his petition, that his ineffective assistance of counsel claims lack merit, and that he procedurally defaulted on any such ineffective assistance claims because he failed to raise them on direct appeal. [Id. at 9.]

---

[2] According to the U.S. Sentencing Guidelines Manual, the total loss for sentencing purposes is calculated as "the greater of actual loss or intended loss." §2B.1.1 cmt. n.3 (2011). "Actual loss" refers to the "reasonably foreseeable pecuniary harm that resulted from the offense;" "intended loss" means "the pecuniary harm that was intended to result from the offense," and "includes intended pecuniary harm that would have been impossible or unlikely to occur." Id. at n.3(A)(i)-(ii).

5

II. <u>LEGAL STANDARD</u>

The federal habeas statute permits an individual in custody to petition a court for release on the ground that his sentence was imposed in violation of the Constitution or the laws of the United States. 28 U.S.C. § 2255(a). Post-conviction relief is available only in "exceptional circumstances" to correct either "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. U.S.</u>, 368 U.S. 424, 428 (1962). Because a section 2255 motion is a collateral attack on a sentence, "a [petitioner] must clear a significantly higher hurdle than would exist on direct appeal" in proving that he is entitled to relief. <u>U.S. v. Frady</u>, 456 U.S. 152, 166 (1982); <u>U.S. v. Davies</u>, 394 F.3d 182, 189 (3d Cir. 2005).

To obtain habeas relief under section 2255, a petitioner must demonstrate that he is "in custody under sentence of a court established by an Act of Congress." § 2255(a). This requirement is jurisdictional in nature. <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989). However, a petitioner need not be incarcerated to be "in custody" within the meaning of section 2255(a) and may satisfy the custody requirement by being on supervised release at the time he files his petition. <u>Id</u>. at

6

491. Custody is measured at the time the petition is filed. Chong v. Dist. Dir., I.N.S., 264 F.3d 378, 382 (3d Cir. 2001).

In seeking collateral review under section 2255, "a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review" and will have "procedurally defaulted all claims that he neglected to raise on direct appeal." Hodge v. U.S., 554 F.3d 372, 378-79 (3d Cir. 2009)(citing Bousley v. U.S., 523 U.S. 614, 621 (1998)). However, a movant will be exempted from the procedural default rule if he can prove "that there is a valid cause for the default, as well as prejudice resulting from the default." Id.

A district court is ordinarily required to hold an evidentiary hearing on a section 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the [petitioner] is entitled to no relief." § 2255(b); U.S. v. Lilly, 536 F.3d 190, 195 (3d Cir. 2008).

III. DISCUSSION

In his section 2255 petition, Mensah-Yawson raises for the first time that he received ineffective assistance of counsel in violation of the Sixth Amendment at his trial and on appeal.[3] In response, the government challenges this court's jurisdiction to hear Mensah-Yawson's section 2255 petition and

---

[3] Because Mensah-Yawson is a pro se litigant, we construe his motion as liberally as possible. U.S. v. Otero, 502 F.3d 331, 334 (3d Cir. 2007).

7

also argues in the alternative that his ineffective assistance of counsel claims are meritless.

While we reject the government's jurisdictional argument, we agree that Mensah-Yawson's Sixth Amendment claims are without merit and that he has failed to satisfy the cause requirement to save the claims from procedural default. We will therefore deny his motion to vacate his sentence without holding an evidentiary hearing.

A. The Government's Jurisdictional Challenge

As a preliminary matter, the government challenges the court's jurisdiction to hear Mensah-Yawson's petition on the ground that he was not "in custody" as defined in section 2255(a). Specifically, the government argues that ICE arrested Mensah-Yawson before he filed his section 2255 petition and that he was thus in ICE's custody rather than in custody under sentence of this court at the time of the petition's filing. Although our court of appeals has not decided this issue specifically, other courts of appeals have held that immigration detention is not "custody" for the purposes of a habeas petition filed under section 2255. See, e.g., U.S. v. Esogbue, 357 F.3d 532, 534 (5th Cir. 2004).

The government's jurisdictional argument is based on an incorrect understanding of the timeline of Mensah-Yawson's

detention. Section 2255 motions of pro se petitioners are deemed to be filed on the date they are signed. Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998). Although Mensah-Yawson's pro se petition was not docketed by the clerk of court until November 16, 2012, the day after his arrest and incarceration by ICE, Mensah-Yawson signed, executed, and mailed the petition on November 5 while he was still serving his term of supervised release. [Docs. No. 236; 239, Ex. 1 at 423; 240.] Consequently, he was not in ICE's custody on November 5, the day he signed and executed his section 2255 petition, but rather was "in custody" under the sentence of supervised release imposed by this court. Thus, we have jurisdiction over the petition.

B. Petitioner's Ineffective Assistance Claims

In reviewing a section 2255 petition, a district court may consider only those claims previously raised on direct appeal, unless there is good cause for the petitioner's previous failure to raise them. Hodge, 554 F.3d 378-79. A claim for the "[i]neffective assistance of counsel that rises to the level of a Sixth Amendment violation constitutes cause for a procedural default." Id. at 379. Therefore, to determine whether Mensah-Yawson may proceed on his ineffective assistance of counsel claims, the court must determine whether his attorney's alleged

9

deficient performance rose to the level of a constitutional deprivation of the right to counsel. Id.

Every criminal defendant has a Sixth Amendment right to "reasonably effective [legal] assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984). However, not every alleged poor performance gives rise to a constitutional violation. An attorney renders constitutionally defective legal assistance in a criminal proceeding "when [her] performance [falls] below an objective standard of reasonableness, given the particular circumstances of the case at hand," and the defendant is more likely than not prejudiced as a result. Hodge, 554 F.3d at 379 (quoting Strickland, 466 U.S. at 688-89). An attorney does not act unreasonably or prejudice her client when she declines to raise a meritless argument. Real v. Shannon, 600 F.3d 302, 309 (3d Cir. 2010).

Moreover, "due to the distorting effects of hindsight," the court's "scrutiny of counsel's performance must be highly deferential," because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689.

1. <u>Counsel's Alleged Failure To Move for the Dismissal of the Indictment</u>

To prevail on his claim that Ms. Frick rendered constitutionally ineffective assistance in failing to move for the dismissal of the indictment, Mensah-Yawson must show that Ms. Frick's inaction was objectively unreasonable and that he was prejudiced as a result. <u>Hodge</u>, 554 F.3d at 379. A review of the record shows that he cannot meet this burden.

Mensah-Yawson submits that Ms. Frick was deficient in failing to move for the indictment's dismissal because "no violation against the United States [] occurred under § 371." [Doc. No. 236 at 4.] Therefore, he argues, the court did not possess subject-matter jurisdiction to hear the case. [<u>Id</u>. at 15.] This argument is without merit. It is well accepted that section 371 criminalizes conspiracies to commit any federal crime, not just those directed against the government. Specifically, section 371 "refers to two types of conspiracies: (1) conspiracy to commit a substantive offense proscribed by another statute" as well as "(2) conspiracy to defraud the United States." <u>U.S. v. Alston</u>, 77 F.3d 713, 718 (3d Cir. 1996).

The charge against Mensah-Yawson falls clearly within the first category. Therefore, Ms. Frick's decision not to move for the indictment's dismissal was not objectively unreasonable.

11

Having failed to prove this, Mensah-Yawson cannot make the showing of prejudice required to sustain an ineffectiveness claim and has thus procedurally defaulted on the claim. Hodge, 554 F.3d at 379. His motion to vacate his sentence on this ground will be denied.

2. Counsel's Alleged Failure To Object to the Total Pecuniary Loss Amount

Next, Mensah-Yawson argues that Ms. Frick's representation was deficient because she did not challenge the total loss figure of $54,586.52 that the court determined at sentencing. Had she done so, and had the court found the total loss to be less than $10,000, Mensah-Yawson would not now be guilty of an aggravated felony and, consequently, would not be facing deportation. See § 1101(a)(43)(M). Again, a review of the record shows that Mensah-Yawson has not met his burden in establishing a Sixth Amendment ineffectiveness claim.

In support of his claim that he is not responsible for more than $10,000 of loss sustained as a result of the check-cashing scheme, Mensah-Yawson alleges only that "there is not a shred of evidence that his scope of [sic] agreement with the coconspirators reached" an amount greater than $10,000. [Doc. No. 236 at 18-19.] He does not challenge either the documentary evidence the government introduced or the witness testimony the government developed at trial, nor does he argue that Ms. Frick

was unreasonable for not objecting to this evidence's admission. He also offers no alternative calculation showing that the total loss attributable to him is indeed less than $10,000.

In fact, contrary to Mensah-Yawson's conclusory allegation that there was not "a shred" of evidence indicating that he was involved with more than $10,000 of loss, the evidence presented at trial showed that he was involved in and directed every aspect of the conspiracy. Several of his co-conspirators testified that he approached and struck deals with them to engage in and split the proceeds of the check fraud. [Doc. No. 239, Ex. 1 at 58-63.] A forensic analysis of his laptop computer showed that it contained a software program to design checks, as well as data files with the bank account numbers of the fraud victims (which had been deleted but were recovered by forensic specialists) and images of the counterfeit checks that were negotiated during the scheme. [Id. at 202-04, 208-18.] Additional evidence further showed that Mensah-Yawson had ordered special "check-making ink" from a company that specializes in that product and that he subsequently asked the company to delete his name and account information from its records. [Id. at 150-54, 164-65.]

Regarding the loss amount specifically, the government presented testimony from two witnesses who specifically implicated Mensah-Yawson in the negotiation or attempted

13

negotiation of at least $10,498 in fraudulent checks. [Id. at 194 at 38-40, 99-102.] Testimony from the Secret Service agents assigned to the case further demonstrated that the loss to one of the fraud victims reached at least $20,000 and that the loss could be traced directly back to Mensah-Yawson. [Id. at 240, 244-54.] This testimony overwhelmingly indicated that Mensah-Yawson was the driving force behind the scheme. Under the U.S. Sentencing Guidelines, as the leader of the conspiracy, Mensah-Yawson is responsible not only for the loss he personally caused or intended to cause the fraud victims, but also any loss or intended loss that he knew or reasonably should have known would occur in the course of the conspiracy. See U.S. SENTENCING GUIDELINES MANUAL 2011, §§ 1B1.3(a)(1)(B), 2B1.1 cmt. n.3(A) (2011).

This evidence is sufficient to support a finding that Mensah-Yawson was responsible for more than $10,000 of pecuniary loss. While the record shows that Ms. Frick brought to the court's attention the importance of the $10,000 figure to Mensah-Yawson's efforts to remain in the United States [id. at 6], the evidence adduced at trial left no doubt that the actual and intended loss of the conspiracy far surpassed $10,000. Any objection by Ms. Frick at sentencing to the total loss amount would have been non-meritorious; thus, the lack of such an objection was not unreasonable and could not have been prejudicial. Real, 600 F.3d at 309. Mensah-Yawson has thus

14

failed to show that Ms. Frick rendered constitutionally ineffective assistance of counsel or that he had cause for his procedural default. Consequently, we will deny his motion to vacate his sentence on this ground as well.

Finally, in light of the foregoing analysis, we find that the motion and records of the case conclusively show that Mensah-Yawson is not entitled to relief. We will thus decline his request for an evidentiary hearing. <u>Lilly</u>, 536 F.3d at 195.

IV. <u>CONCLUSION</u>

For the reasons set forth above, petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 is denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEVEN MENSAH-YAWSON, )
    Petitioner, )
) Crim. Action No. 09-0276
v. ) Civil Action No. 12-1685
)
UNITED STATES OF AMERICA, )
    Respondent. )

ORDER

AND NOW, this 11 day of March, 2013, IT IS HEREBY ORDERED that petitioner's motion to vacate, set aside, or correct sentence [Crim. No. 09-0276, at doc. no. 236] is DENIED without prejudice to his right to challenge the execution of his sentence under 28 U.S.C. § 2241.

IT IS FURTHER ORDERED that a Certificate of Appealability SHOULD NOT ISSUE with respect to the court's order dismissing petitioner's section 2255 motion, for the reasons set forth in the accompanying opinion.

_____, C.J.

cc: All Counsel of Record

    Steven Mensah-Yawson, pro se
    York County Prison
    Pouch #193359
    Housing: M-E8
    3400 Concord Road
    York, PA 17402